IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PETER STROJNIK,

    Plaintiff,

v.

ALBUQUERQUE BOCA HOTEL, LP
D/B/A CROWNE PLAZA
ALBUQUERQUE,

    Defendant.

No. 1:20-cv-00843-WJ-GBW
No. 1:20-cv-00875-WJ-GBW
No. 1:20-cv-00938-WJ-GBW
No. 1:20-cv-00940-WJ-GBW
No. 1:20-cv-00998-WJ-GBW
No. 1:20-cv-01003-WJ-GBW
No. 1:20-cv-01034-WJ-GBW
No. 1:20-cv-01325-WJ-GBW
Consolidated

## MEMORANDUM OPINION AND ORDER IMPOSING FILING RESTRICTIONS

**THIS MATTER** comes before the Court on Intervenor State of New Mexico's ("State") Motion to Declare Plaintiff a Vexatious Litigant, Doc. 89, filed April 8, 2021 ("Motion"), and Plaintiff's Cross Motion for Sanctions Pursuant to 42 U.S.C. § 12203 and 28 C.F.R. 36.02, Doc. 104, filed May 7, 2021.

**The State's Motion**

The State asserts that Plaintiff's complaints in this Court "are without merit, and are nothing more than recitation of non-specific allegations that have been rejected in numerous previous lawsuits in other legal forums." Motion at 1. The State summarizes Plaintiff's litigation history stating: (i) "As an attorney, Plaintiff filed more than 1,700 ADA cases in Arizona state court and upwards of 160 lawsuits in federal courts;" (ii) Plaintiff's "unethical conduct in ADA litigation led to his disbarment as a member of the State Bar of Arizona, to which [Plaintiff] voluntarily consented;" (iii) "Following [Plaintiff's] disbarment, he has continued to file hundreds of cases alleging nearly identical claims for disability discrimination as a *pro se* litigant; (iv) "Despite numerous admonishments by federal courts, [Plaintiff] has maintained his pattern of abusive

tactics by continuing to file groundless claims in bad faith;" and (v) "courts have dismissed [Plaintiff's] complaints without leave to amend and declared [Plaintiff] a vexatious litigant in federal courts in California and Arizona."  Motion at 1-2.

The State argues that Plaintiff's ADA claims in this Court are "baseless" stating: (i) "Plaintiff identifies purported ADA violations, but does not allege how these purported violations caused him to suffer an injury-in-fact, nor does he allege any facts demonstrating how the alleged ADA violations affected his purported disability;" (ii) "In a deposition under oath, [Plaintiff] testified that he does not inspect properties in a wheelchair, does not use a wheelchair or ambulatory device at home, and has not modified his home in any way to make it accessible;" (iii) Plaintiff "submitted to an Independent Medical Evaluation with orthopedist, Dr. Greenfield M.D., who determined that [Plaintiff] 'ambulates relatively well with a very slight limp'; has 'no evidence of positive nerve root tension signs'; has 'functional range of motion of his shoulders"; and an 'adequate grip on both the right- and the left-hand side;'" (iv) "Dr. Greenfield's assessment of [Plaintiff] is supported by numerous recordings posted by hotel owners on YouTube showing [Plaintiff] walking around their properties without any cane, crutch, or visible disability;  (v) Plaintiff's Complaints fail to demonstrate that he suffered an injury-in-fact; (vi) Plaintiff's requests for injunctions against the hotels fail to allege that he ever intends to return to any of these eight hotels [and] Without an intent to return to the hotels, Plaintiff cannot be under a real and immediate threat of being injured in the future."  Motion at 7-8.

The State contends that Plaintiff's "numerous prior ADA filings have shown his primary goal is pressuring defendants into monetary settlements" and that Plaintiff "generally refuses to dismiss the cases unless the defendants pay."  Motion at 8-9.  The State also contends that: (i) Plaintiff asserts state-law claims because there is no private right to damages under the ADA; (ii)

2

Plaintiff's "negligence claims often triggers the defendants' commercial general insurance policy which allows him to negotiate quick settlements with insurance carriers who begrudgingly settle his claims for 'cost-of-defense' or 'nuisance' values;" (iii) Plaintiff "seeks more than $35,000 per case for his 'emotional suffering' plus $50,000 in punitive damages;" (iv) Plaintiff's negligence claims, which allege only emotional suffering damages, but do "not allege that the purported barriers to accessibility caused him physical injury," are "baseless under New Mexico law" because "New Mexico courts have limited damages for emotional anguish to cases in which a plaintiff has first established an intentional tort, defamation, loss of consortium, or a physical injury;" and (v) Plaintiff's claims for violations of New Mexico's Unfair Practices Act ("UPA") are also baseless because the UPA "gives standing only to buyers of goods or services" and Plaintiff "does not allege that the alleged misrepresentations caused him to actually purchase any goods of services from defendants." Motion at 9-11.

The State suggests:

the Court adopt the U.S. District Court of Arizona's solution and force [Plaintiff] to immediately post a $10,000 bond in every accessibility case before this Court. The bond would be payable to Defendants in the event [Plaintiff] does not prevail on his accessibility claim. If [Plaintiff] fails to post a bond, his cases would be dismissed with prejudice.

Motion at 12. The State also requests that the Court "prohibit Plaintiff from filing any civil action alleging a cause of action for violation of the Americans with Disabilities Act within the United States District Court for the District of New Mexico, without first obtaining certification that his claims are not frivolous or asserted for an improper purpose." Motion at 12-13.

**Plaintiff's Response to State's Motion**

Plaintiff states he is:

an avid protector of civil rights. As a lawyer, Plaintiff filed over 1,000 civil rights cases in Arizona alone, earned $1.2M+ in Lawyers' fees and donated every red cent

3

>of those fees to a 301(c)(3) charitable organization for the disabled so they could purchase wheelchairs, beds, and other specialty equipment for distribution to Arizona's disabled community.

Response at 1, Doc. 104, filed May 7, 2021.  While the Court commends Plaintiff for donating his attorney fees in those cases in which he prevailed on the merits, the issue before the Court is Plaintiff's behavior in the cases currently before the Court.

>Generally, *pro se* litigants are held to the same standards of professional responsibility as trained attorneys.  It is a *pro se* litigant's responsibility to become familiar with and to comply with the *Federal Rules of Civil Procedure* and the *Local Rules of the United States District Court for the District of New Mexico*.

Guide for Pro Se Litigants at 4, United States District Court, District of New Mexico (November 2019).  The Court will not give a party credit for his good behavior to offset other abusive behavior.

Plaintiff states that he:

>noticed a significant shift in the treatment of civil rights: From Congressional recognition of the need for integration of the disabled into the mainstream of American life, the tide turned from the protection of the disabled to the protection of segregationist public accommodations ... The primary effect of this shift on Plaintiff was to resign from the Arizona State Bar on October 24, 2018 for reasons that his 'continuing association with the State Bar is inconsistent with [his] core principles of morality and fair play' ... The SBA did not accept Plaintiff's resignation so Plaintiff took the next best option – a complete and absolute dissociation from the SBA.

Response at 1-2.

Plaintiff points out that he "has filed none of the consolidated cases in the U.S. District Court for the District of New Mexico.  All were filed in state courts and removed to the district court by the consolidated defendants."  Response at 3.  Plaintiff argues that the Court does not have jurisdiction to declare him a vexatious litigant for cases filed in state court because the jurisdiction to do so is explicitly prohibited by the Anti Injunction Act.  Response at 4.  The Anti Injunction Act states: "A court of the United states may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its

jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.  Plaintiff misconstrues the State's Motion.  The State is not asking the Court to restrict Plaintiff from filing in state court.  The State is asking the Court to require Plaintiff to post a bond if his state-court cases are removed to this Court, and to restrict Plaintiff's ability to initiate cases in this Court by requiring that Plaintiff certify they are not frivolous or asserted for an improper purpose.  The Court has the power to regulate the activities of abusive litigants in this Court regardless of whether the litigant filed the case here or if the case was filed in state court and later removed to this Court.  *See Landrith v. Schmidt*, 732 F.3d 1171, 1174 (10th Cir. 2013) ("There is strong precedent establishing the inherent power of federal courts to regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances").

Plaintiff states that the Court's power to restrict a plaintiff from filing litigation is based on the All Writs Act.  Response at 5.  The All Writs Act states: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).  Plaintiff argues that:

> Where a plaintiff files an action in state court, and a defendant removes it to the district court on jurisdictional grounds, only to then attack it for lack of Article III jurisdiction (standing), "the only potentially abusive act is the removal.  It is not the plaintiff who committed an act that requires district court's action "in aid of its jurisdiction".  It is the defendant.  The defendant argues that the district court has jurisdiction, not Plaintiff.  By filing in the state court, Plaintiff did not offend any state laws.  Plaintiff did not offend any federal law.  Plaintiff did not offend anyone's jurisdiction.  Defendants offended this Court's jurisdiction.  If an [All Writs Act] restriction [to enjoin abusive litigation activity] is to be imposed, it must be imposed against the consolidated defendants and the [State], not against Plaintiff."

Response at 5.  Plaintiff's argument is frivolous.  The removal statute states "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for

the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). This Court has original jurisdiction over the civil actions Plaintiff filed in state court because he asserted claims pursuant to the Americans with Disabilities Act. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"). Defendants did not "offend this Court's jurisdiction" because the removal statute allows defendants to remove cases where the Court has federal question jurisdiction.

Plaintiff notes restrictions are only appropriate where the litigant's abusive and lengthy history is set forth and states: (i) the State's Motion "points to no abusive behavior by Plaintiff in this District;" (ii) "[t]here are no abusive claims in any of the Plaintiff's removed and consolidated lawsuit;" (iii) the State's Motion "points to no 'Lengthy History' in this District;" and (iv) "Plaintiff has filed no cases in the [United States District Court for the District of New Mexico]." Response at 6. Plaintiff mischaracterizes the State's Motion when he says the State's Motion points to no abusive behavior by Plaintiff in this District. The State's Motion asserts that: (i) Plaintiff's ADA claims in this Court are "baseless" because "Plaintiff identifies purported ADA violations, but does not allege how these purported violations caused him to suffer an injury-in-fact; (ii) Plaintiff's negligence claims in this Court are "baseless under New Mexico law" because "New Mexico courts have limited damages for emotional anguish to cases in which a plaintiff has first established an intentional tort, defamation, loss of consortium, or a physical injury;" and (iii) Plaintiff's claims for violations of New Mexico's Unfair Practices Act ("UPA") are also baseless because the UPA "gives standing only to buyers of goods or services" and Plaintiff "does not allege that the alleged misrepresentations caused him to actually purchase any goods of services from defendants." Motion at 7-11. Plaintiff makes the conclusory argument that his claims are not baseless but does

not include legal authority to support his argument. *See* Response at 6 (stating: "There are no *abusive* claims in any of the Plaintiff's removed and consolidated lawsuit. The consolidated claims are valid, factually supported claims based on the current state of the law") (*emphasis in original*); D.N.M.LR-Civ. 7.3(a) ("A motion, response or reply must cite authority in support of the legal positions advanced").

> Plaintiff asserts that:
>
> Unequal treatment of persons with disabilities by consolidated defendants and the [State] is a matter of public policy. Public policy issues are material issues of public interest that must be brought to the attention of the citizens of New Mexico. Therefore, Plaintiff proposes that these issues be discussed in open forum, in front of the media, with [New] Mexico's Attorney General (and any number of his assistants) arguing for the protection of ADA violating public accommodations, and Plaintiff arguing for the equal rights of the disabled. If [the State] is able to set a public forum, as he can as the chief law enforcement officer of the State of New Mexico, and if he assures Plaintiff safe passage from and to the debate, Plaintiff is ready and willing to travel to Albuquerque and hash this out.

Response at 8. Whether Plaintiff and the State have a public debate in the media is not relevant to the issues before the Court. Nor has Plaintiff shown that the Court has jurisdiction to order such debate. Most of the documents filed in this case have not been sealed and so are in the public record.

The Court denies Plaintiff's cross-motion for sanctions. *See* Response at 8. Plaintiff contends that the State's Motion is "not designed to challenge the merits of a case, but to challenge the person bringing the case. Such motions are filed in retribution and themselves violate the anti-retaliation provisions of 42 U.S.C. § 12203, 28 C.F.R. 36.302."[1] Response at 6. Plaintiff states

---

[1] 42 U.S.C. § 12203 provides:

**(a) Retaliation**
No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

7

"the harm has occurred because [the State] engaged in one of the specifically prohibited forms or retaliation and coercion. Coercion can include the application of sanctions or force by a government to compel dissenters to conform." Response at 7. It is not clear that the anti-retaliation provisions cited by Plaintiff apply here because the State is not retaliating against or coercing Plaintiff because Plaintiff is filing ADA claims. The State's Motion clearly alleges Plaintiff's vexatious filing history and asks the Court to impose restrictions designed to curb Plaintiff's abusive filing behavior in the cases now before the Court and in future cases in this Court. The State's Motion does not, and cannot as a motion, apply "sanctions or force" to compel Plaintiff to conform. It merely asks the Court for relief.

**Plaintiff's Response to Court's Order to Show Cause**

Before deciding whether to impose restrictions, the Court granted Plaintiff an opportunity to be heard on his filing activity in this Court which was not addressed in the briefing of the State's motion to declare Plaintiff a vexatious litigant. *See* Order to Show Cause, Doc. 137, filed August 4, 2021. The Court described Plaintiff's filing history in this Court which included improper filing that caused the Court and opposing Parties to unnecessarily expend valuable resources addressing those filings. The Court also noted that the terms of the settlement agreements between Plaintiff and certain Defendants, when considered with Plaintiff's statement that a fiscal arrangement is

---

**(b) Interference, coercion, or intimidation**
It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

28 C.F.R. 36.302 provides:

quickly reached if supplemental claims are asserted, suggest that Plaintiff's primary purpose in filing these cases is to obtain monetary settlements instead of remediating the alleged accessibility barriers.

Plaintiff's Response to the Court's Order to Show Cause does not address Plaintiff's improper filing that caused the Court and opposing Parties to unnecessarily expend valuable resources addressing those filings. *See* Doc. 139, filed August 9, 2021 ("Response to OSC").

Regarding the Court's concern that the settlement agreements and Plaintiff's statement regarding the assertion of supplemental claims to obtain "fiscal arrangements" suggest that Plaintiff filed the supplemental claims for an improper purpose, Plaintiff states: "there is no need for an ADA settlement to require a defendant to comply with the ADA. Compliance is mandatory by operation of law." Response to OSC at 2-3. Plaintiff does not address whether the supplemental claims were filed for an improper purpose. In his Response to the State's Motion, Plaintiff discusses how he is "an avid protector of civil rights" and "fights for the disabled in the time honored tradition of civil rights litigation," Response at 1-2, but does not explain how ADA compliance is achieved by (i) filing supplemental state-law claims to obtain settlements, (ii) obtaining monetary settlements that do not remedy alleged accessibility barriers, and (iii) dismissing with prejudice the ADA and all other claims.

Plaintiff states that the Court has ordered him to "show cause why he should not be denied his 1st Amendment protection while the ADA violating public accommodations are permitted to continue their denials of equal rights unabated." Response to OSC at 3. Plaintiff also states: "Plaintiff does not intend to file any ADA cases in New Mexico. Any denial of Plaintiff's future right to redress is moot." Response to OSC at 3. Plaintiff mischaracterizes the Order to Show Cause. The Court is not depriving Plaintiff of any rights.

> "[T]he right of access to the courts is neither absolute nor unconditional and there is no constitutional right of access to the courts to prosecute an action that is frivolous or malicious." *Tripati v. Beaman,* 878 F.2d 351, 353 (10th Cir.1989) (per curiam) (citation omitted). "There is strong precedent establishing the inherent power of federal courts to regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances." *Cotner v. Hopkins,* 795 F.2d 900, 902 (10th Cir.1986). "Even onerous conditions may be imposed upon a litigant as long as they are designed to assist the ... court in curbing the particular abusive behavior involved," except that they "cannot be so burdensome ... as to deny a litigant meaningful access to the courts." *Id.*

*Landrith v. Schmidt*, 732 F.3d 1171, 1174 (10th Cir. 2013). Plaintiff will have meaningful access to the Court, but under conditions carefully tailored to curb his abusive behavior.

**Filing Restrictions**

The Court finds that filing restrictions are appropriate. Plaintiff, who is an experienced but disbarred attorney, has misconstrued the State's Motion, made incorrect legal arguments, and failed to cite authority to rebut the State's assertion that his claims are baseless.

Plaintiff has also improperly filed nine documents over the last 11 months in this Court which have caused the Court and opposing parties to unnecessarily expend valuable resources. When given the opportunity to be heard on his filing history in this Court, Plaintiff did not address his filing history.

After the Court noted its concern about it appearing that Plaintiff filed his supplemental state claims to obtain settlements, Plaintiff, instead of addressing why he filed the supplemental state claims and why such filing was not improper, stated the obvious by noting that compliance with the ADA is mandatory. Plaintiff has had eight of his cases removed to this Court. The Complaints in each of his removed cases are very similar. For the two cases where the Court has reviewed the settlement agreements, the Court finds that Plaintiff has improperly asserted supplemental state-law claims to obtain monetary settlements.

The Court also finds that because Plaintiff had extensive experience as an attorney licensed

10

to practice law in Arizona before being disbarred, his mischaracterization of the State's Motion, his incorrect legal arguments, his failure to cite authority showing his claims are not baseless, his improper filing of documents, and his filing of supplemental state-law claims to obtain monetary settlements were intentional and not the result of mistake, confusion of legal theories, or unfamiliarity with pleading requirements, the Federal Rules of Civil Procedure and the District of New Mexico's Local Rules.

The Court, which sits in a Southwest Border District and has a tremendous case load, does not have to wait until Plaintiff files dozens of frivolous cases before imposing restrictions to curb his abusive filing in this Court. The restrictions the Court is imposing are justified by Plaintiff's filing history in this Court during the past 11 months and are not so burdensome as to deny Plaintiff meaningful access to the Court. While the restriction that Plaintiff must post a bond to prosecute an ADA claim in this Court *pro se* may seem onerous, the Court also allows Plaintiff to prosecute ADA claims in this Court if a licensed attorney authorized to practice in this Court appears and signs Plaintiff's filings. If Plaintiff is harmed by accessibility barriers at places of public accommodation and truly wants those barriers remediated, the ADA gives courts discretion to award attorney fees to a prevailing party. *See* 42 U.S.C. § 12205.

The Court now imposes the following filing restrictions on Plaintiff:

Plaintiff will be enjoined from initiating future litigation in this Court, and the Clerk will be directed to not file any initial pleading that he submits, unless either a licensed attorney who is admitted to practice before this Court signs the pleading or Plaintiff first obtains permission to proceed *pro se*. *See DePineda v. Hemphill*, 34 F.3d 946, 948-49 (10th Cir. 1994). To obtain permission to proceed *pro se* in this Court, Plaintiff must take the following steps:

> 1. File with the Clerk of Court a petition requesting leave to file a *pro se* initial pleading, a notarized affidavit, the proposed initial pleading, and a copy of these filing restrictions;

      2. The affidavit must be notarized, be in proper legal form and recite the claims that Plaintiff seeks to present, including a short discussion of the legal bases for the claims, and the basis of the Court's jurisdiction of the subject matter and parties.  The affidavit must certify that, to the best of Plaintiff's knowledge, his claims are not frivolous or made in bad faith; that they are warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; that the new suit is not initiated for any improper purpose such as delay or needless increase in the cost of litigation; and that he will comply with all Federal Rules of Civil Procedure and the District of New Mexico's Local Rules of Civil Procedure.  If Plaintiff's claims have previously been raised or the defendants have previously been sued, the affidavit must certify that the proposed new suit does not present the same claims that this or other court has decided and explain why the new suit would not be an abuse of the system;

      3. The Clerk of the Court shall open a new civil case, file the petition, the affidavit, the proposed pleading and the copy of these restrictions in the new civil case, and randomly assign a Magistrate Judge to determine whether to grant Plaintiff's petition to proceed *pro se* in the new civil case. *See* Mem. Op. and Order, Doc. 21 at 6-9, filed in *In re Billy L. Edwards*, No. 15cv631 MCA/SMV (D.N.M. November 13, 2015) (adopting procedure, similar to that of the Tenth Circuit, of opening a new case and filing the restricted filer's petition to proceed *pro se*).  If the Magistrate Judge approves Plaintiff's petition to proceed *pro se*, the Magistrate Judge shall enter an order indicating that the matter shall proceed in accordance with the Federal Rules of Civil Procedure and the District of New Mexico's Local Rules of Civil Procedure.  If the Magistrate Judge does not approve Plaintiff's petition to proceed *pro se*, the Magistrate Judge shall instruct the Clerk to assign a District Judge to the new case.

Within 21 days after filing a new action in the United States District Court for the District of New Mexico alleging violations of the Americans with Disabilities Act, within 21 days after an action is removed from state court to United States District Court for the District of New Mexico alleging violations of the Americans with Disabilities Act, or within 21 days after Mr. Strojnik amends a complaint before the United States District Court for the District of New Mexico to include alleged violations of the Americans with Disabilities Act, Mr. Strojnik shall: (i) post a bond for $10,000; or (ii) have a licensed attorney who is admitted to practice before this Court appear in the action and sign each of Mr. Strojnik's filings. If after 21 days, Mr. Strojnik fails to post the bond or have such an attorney sign Mr. Strojnik's filings, the Court will dismiss the case for failure to comply with this Order.

If Mr. Strojnik chooses to post a bond, and if at any point the Court determines that Mr. Strojnik fails to demonstrate standing or otherwise meet federal pleading requirements, the Court will initiate sanctions proceedings by ordering Mr. Strojnik to show cause why sanctions, including dismissal with prejudice, should not be imposed under Federal Rule of Civil Procedure 11(b)(1). If, after providing Mr.

Strojnik an opportunity to be heard, the Court imposes sanctions, the bond shall be used towards paying the opposing party's reasonable attorney's fees. Any remaining amount will be returned to Mr. Strojnik. If the Court finds Mr. Strojnik demonstrates standing and meets federal pleading requirements, or if the Court declines to impose sanctions, Mr. Strojnik may recover the bond.

**IT IS ORDERED** that:

(i)   The State of New Mexico's ("State") Motion to Declare Plaintiff a Vexatious Litigant, Doc. 89, filed April 8, 2021, is **GRANTED in part.** The Court grants the State's Motion to impose filing restrictions but imposes the restrictions described above instead of the vaguely worded restrictions in the State's Motion.

(ii)  Plaintiff's Cross Motion for Sanctions Pursuant to 42 U.S.C. § 12203 and 28 C.F.R. 36.02, Doc. 104, filed May 7, 2021, is **DENIED.**

(iii) The filing restrictions described above are **IMPOSED.**

                                                    **WILLIAM P. JOHNSON**
                                         **CHIEF UNITED STATES DISTRICT JUDGE**